| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:18-CR-199(2) |
| § | |
| HEATHER ROSEMEAD MAY § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Heather Rosemead May's ("May") *pro se* Motion for Compassionate Release (#114), wherein she requests that the court release her from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#117). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

May's offense of conviction stems from her participation in a drug-trafficking conspiracy. On October 10, 2018, a federal grand jury in the Eastern District of Texas returned a two-count Indictment charging May and two codefendants in Count 1 with Conspiracy to Distribute or Possess With Intent to Distribute 500 Grams or More of Methamphetamine or 50 Grams or More of Methamphetamine (Actual), in violation of 21 U.S.C. § 846, and May, separately, in Count 2 with Use, Carrying, or Possession of a Firearm During, in Relation to, and in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). On February 1, 2019, May pleaded guilty to Count 1 of the Indictment pursuant to a binding plea agreement with an agreed sentence

of 180 months' imprisonment. Subsequently, on July 25, 2019, the court sentenced May to 180 months' imprisonment, to be followed by a 5-year term of supervised release. The court ordered May's sentence to run concurrently with any sentence imposed in Docket No. CF18-00504 in the 235th District Court of Cooke County, Texas, but to run consecutively to any sentence imposed in Docket No. F16-1614-362 in the 362nd District Court of Denton County, Texas. May is currently housed at Federal Medical Center Carswell, located in Fort Worth, Texas ("FMC Carswell"). Her projected release date is May 18, 2031.

II.     Analysis

    A.     Exhaustion of Administrative Remedies

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her

administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, May submitted a request for compassionate release to the warden of her facility on the same grounds as her present motion on February 21, 2021. Warden M. Carr denied May's request on March 9, 2021, noting:

> The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your current medical condition related to COVID-19 does not currently warrant an early release from your sentence. Accordingly, your [Reduction in Sentence] request is denied at this time.

Although May complied with the exhaustion requirement before filing the instant motion, nothing in her motion indicates that extraordinary and compelling reasons exist to release her from confinement.

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release she must establish three criteria. *United States v. Shkambi*, ___ F.3d ___, No. 20-40543, 2021 WL 1291609, at * 3 (5th Cir. Apr. 7, 2021). First, she must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at *2. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from [the United States Sentencing Commission ("Commission")]." *Id.* at *3. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Shkambi*, 2021 WL 1291609, at * 3. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G.

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

§ 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.² However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.³ Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on her own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *Id*. at \*4. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

² In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

³ U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

B.     Medical Condition

In the instant motion, May, age 36, contends that she is eligible for compassionate release due to her medical condition—specifically, that she "has COVID-19" as well as symptoms of the virus, including "aches, pains, headaches, blurred vision, coughing[,] and problems breathing." Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with her Presentence Investigation Report ("PSR"), prepared on May 29, 2019, May reported that she suffers from lower back pain, for which she takes ibuprofen. She also indicated that she has been diagnosed with human papilloma virus; however, Probation noted that her most recent pap smear test was normal. May also stated that she fractured her left arm on two separate occasions. May's 2021 BOP medical records reveal that she has been diagnosed with herpesviral infection, bipolar disorder, acne, abnormal uterine and vaginal bleeding, and a rash on her skin, and that she is currently prescribed carbamazepine to treat bipolar disorder, doxycycline hyclate for acne, mirtazapine to treat depression, and norethindrone/ethinyl estra + fe for hormone replacement therapy.

May's BOP medical records show that she tested positive for COVID-19 on January 21, 2021, and, as of February 5, 2021, she had recovered from the virus, as confirmed by a negative test result. Her medical records indicate that she had an asymptomatic case of COVID-19. Thus, May's medical records do not reflect that she experienced the symptoms associated with COVID-19 that she now claims.

Further, May is classified as a BOP medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring." Indeed, none of May's medical conditions are serious, terminal, or substantially diminish her ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, May's conditions are well managed with medication. *See id.* In fact, May's BOP records reveal that she is housed in general population, has no medical restrictions, has regular duty work assignments, is cleared for food service, and her current work detail is hospital bio-med equipment assistant. Thus, May has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce her sentence.

    C.    <u>Other Reasons</u>

May further requests compassionate release due to her post-conviction rehabilitation and the threat of COVID-19. It is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the

district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94. In exercising its discretion, the court finds that no extraordinary and compelling reasons exist in relation to May's situation.

Nonetheless, May maintains that her post-sentence rehabilitation, evidenced by a list of courses and programs she has completed, establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 2021 WL 1291609, at *3; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

In addition, May maintains that if she contracts COVID-19 it will be fatal for her due to prison overcrowding and there being no way to distance herself from other inmates. Nevertheless, as of April 19, 2021, the figures available at www.bop.gov list 0 inmates (out of

9

a total inmate population of 1,386) and 0 staff members at FMC Carswell as having confirmed positive cases of COVID-19, 739 inmates and 3 staff members who have recovered, and 6 inmates who succumbed to the disease. Indeed, as mentioned above, May tested positive for the disease and has now recovered from the virus, as confirmed by a recent negative COVID-19 test. Thus, it appears that the facility where May is housed is handling the outbreak appropriately and providing adequate medical care.

Although May expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat May, if she were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D.

La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Further, courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like May, have already contracted and recovered from the virus. *See, e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.")); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted

11

the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 136,966 doses of the vaccine. Indeed, according to www.bop.gov, FMC Carswell, where May is housed, has fully inoculated 731 inmates and 257 staff members. May's BOP medical records, however, reflect that she refused the Pfizer-BioNTech vaccine on February 23, 2021. Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction." (quoting *United States v. Lohmeier*, No. 12-CR-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021))); *United States v. McBride*, No. 519CR00007KDBDCK1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison."). Similarly, May cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated. Therefore, in view of May's recovery from COVID-19 and her refusal to receive the COVID-19 vaccine, May has failed to establish that extraordinary and compelling reasons exist to release her from prison.

In her motion, May also seeks to relitigate her offense of conviction. May contends that "the PSR improperly calculated drug quantity and improperly applied an incorrect drug weight which escalated her final sentence by years," as well as incorrectly assessed her with a "gun enhancement." May contends that these alleged deficiencies warrant compassionate release. In support of her guilty plea and plea agreement, May voluntarily signed a Factual Basis (#77). Relying on the Factual Basis, Probation calculated a base offense level of 32 in her PSR, reasoning:

> The defendant stipulated in her Factual Basis in Support of Plea Agreement that from June 2018 and continuing to August 2, 2018, she conspired with others to distribute and possess with intent to distribute at least 500 grams or more of methamphetamine. She further stipulated that she purchased approximately ½ pound of methamphetamine per week from June 2018 to August 2, 2018, which is equivalent to a total of 2.04 kilograms of methamphetamine. An offense involving at least 1.5 kilograms but less than 5 kilograms of methamphetamine or at least 150 grams but less than 500 grams of methamphetamine (actual), provides for a base offense level of 32. USSG § 2D1.1(b)(1).

Probation enhanced May's offense level by 2 points, stating:

> During a search of the defendant's residence on August 2, 2018, [as indicated in May's Factual Basis,] investigators recovered 263 grams of methamphetamine, digital scales, drug packaging materials, and a stolen Taurus, 9mm handgun . . . . Pursuant to USSG § 2D1.1(b)(1), if a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

The PSR was disclosed to May on May 31, 2019, and no objections were filed by the deadline of June 21, 2019. Moreover, May's plea agreement contained an agreed sentence of 180 months' imprisonment, which was the sentence pronounced by the court. This was a favorable outcome for May, as the applicable sentencing guidelines range was 188 to 235 months' imprisonment.

In any event, May's arguments are nothing more than an attempt to revisit determinations made years ago at the time of her sentencing in 2019. May's conviction and sentence became final

13

when the deadline for filing an appeal expired in 2019. May, however, neither filed an appeal nor sought habeas corpus relief. It has long been recognized that "[t]he principle of finality . . . is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Appreciating the importance of finality, Justice Harlan stated in his concurring opinion in *Mackey v. United States*:

> No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.

401 U.S. 667, 691 (1971). This principle of finality forecloses May's current endeavor to circumvent the limitations on post-conviction relief by challenging determinations made at sentencing under the guise of a compassionate release motion. In short, May has not presented any extraordinary and compelling reasons meriting a reduction of her sentence.

    D.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Shkambi,* 2021 WL 1291609, at *3; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. May's offense of conviction entails her participation in a drug-trafficking conspiracy involving the distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or 50 grams or more of methamphetamine (actual). As part of the conspiracy, May served as a source of supply for methamphetamine in the Denton, Texas, area, as well as in southern Oklahoma. She purchased approximately 8 ounces of methamphetamine per

week from a codefendant for a 2-month period in 2018 for the purpose of distributing it to others. During that same time period, she sold approximately 1 ounce of methamphetamine per week to another codefendant. On August 2, 2018, law enforcement officers recovered 263 grams of methamphetamine, marijuana, digital scales, drug paraphernalia, drug packaging materials, and a stolen Taurus 9mm handgun during the execution of a search warrant at May's residence.

May has an extensive criminal history dating from age 14, including prior convictions for assault-family violence, criminal trespass, unauthorized use of a motor vehicle (2), possession of marijuana (3), misprision of a felony, theft of property (2), fraudulent use of identifying information (2), theft by check, possession of paraphernalia, organized retail theft, failure to identify as a fugitive (2), and false report to police officer. Additionally, she failed to comply with previous terms of probation and was on parole at the time of the offense of conviction. May also has a history of disciplinary infractions while in BOP custody, including citations for unauthorized physical contact (2) and being in an unauthorized area. Moreover, she has been assessed by BOP officials as posing a high risk of recidivism.

In addition, May has a long history of mental health problems for which she is being treated by the BOP. On December 3, 2020, Lili Meisamy, D.O., noted that "[m]edication and therapy have been inconsistent with multiple episodes of incarceration, [jail,] and court[-]mandated anger management." May also has a history of poly-substance abuse, including the daily use of methamphetamine up to the date of her arrest and the regular use of alcohol and marijuana. May reported to Probation that she has ingested methamphetamine by eating it, through inhalation, and intravenously. She admitted that she had used an "excessive amount" of methamphetamine and estimated that she consumed 3.5 grams daily. Dr. Meisamy opined:

15

> [Drug of choice] is methamphetamine. It made her calm. However, perspective may be affected as these periods also led to jail/behavioral disruptions. Although she may well have ADHD, she fails to understand that the behavioral disturbance she experienced each time she didn't use is more reflective of addiction.

In view of the nature and circumstances of her offense of conviction, her extensive criminal history, her disciplinary history while in BOP custody, and her history of substance abuse, the court cannot conclude that May's early release from prison would afford adequate deterrence or protect the public, as she continues to pose a danger to other persons and to the community as a whole.

In addition, granting May compassionate release would fail to provide just punishment for her offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a significant portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id*. at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing May after she has served only 31 months (or

approximately 17%) of her 180-month sentence would similarly minimize the impact of her crime and the seriousness of her offense.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, May's track record is abysmal. Moreover, May's refusal to recognize the wrongfulness of her actions gives cause for concern as to her future conduct. Thus, there is no reason to believe that May would not revert to her drug-dealing and drug-abusing behavior, as well as her other criminal activities, if released from prison at this time.

III. Conclusion

In short, May has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, May's *pro se* Motion for Compassionate Release (#114) is DENIED.

SIGNED at Beaumont, Texas, this 20th day of April, 2021.

                                                MARCIA A. CRONE
                                          UNITED STATES DISTRICT JUDGE